MONTPELIER & W. R. R. R. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

No. 235.

CARRIERS (§ 32*)—INTERSTATE COMMERCE ACT—RECEIVING REBATES—CRIMINAL LIABILITY.

Defendant operated a line of railroad from Montpelier to Wells River, in Vermont, a distance of 39 miles. By a joint tariff, to which it was a party, the rate on coal from a point in Pennsylvania to Montpelier was fixed at $3.55 per ton, and to all other points on its line at $3.80, of which it received 75 cents as its share. The published rules also provided that, where the point of destination of a shipment was between any two points named in the schedules, the rate should be the same as to the next more distant point named. *Held,* that the tariff rate to Montpelier should be construed as applying to the station in that city, and that where defendant received coal for its own use, which it received at such station and hauled over its own line to a chute between that and the next station, although within the limits of the city, the fact that it had the coal billed at the $3.80 rate and took its divisional share thereof did not render it subject to prosecution for receiving a rebate, in violation of Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 382 (U. S. Comp. St. 1901, p. 3160), as amended by Act Feb. 19, 1903, c. 708, 32 Stat. 847 (U. S. Comp. St. Supp. 1909, p. 1138).

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*]

In Error to the District Court of the United States for the District of Vermont.

Action by the United States against the Montpelier & Wells River Railroad. Judgment for the United States, and defendant brings error. Reversed.

On writ of error to review a judgment entered against the defendant below, the Montpelier & Wells River Railroad, upon the verdict of a jury finding the defendant guilty upon the first count of the indictment charging it with the violation of section 10 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3160]), as amended by Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1909, p. 1138]. The allegation of the indictment is that on November 23, 1909, the defendant accepted and received an unlawful discrimination of 50 cents for every gross ton of a carload of coal transported from Echo, Pa., to Montpelier, Vt., and delivered to said defendant. The defendant was sentenced to pay fine of $1,000.

H. C. Shurtleff, for plaintiff in error.
Alexander Dunnett, U. S. Atty.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The defendant is charged with having, by means of false billing, obtained transportation for coal owned and used by it at less than the legal rate. The defendant is a railroad corporation owning and operating a railroad from Montpelier to Wells River, Vt., a distance of 39 miles. The railroads connecting Echo, Pa., with Montpelier, Vt., had established a joint tariff, for transporting coal from Echo to Montpelier, of $3.55 per gross ton and from Echo to Wells River, and intermediate stations on defendant's

line, of $3.80 per gross ton. The tariff in effect at the time in question was filed with the Interstate Commerce Commission August 19, 1909, and took effect September 20th of the same year. The share of the defendant, on division of the through rate, was 75 cents per gross ton for transporting the coal over its line. The specific charge against the defendant is that it billed its coal to Wells River, when it was transported only to Montpelier; that by this deception the defendant was enabled, after its share of 75 cents upon the division as aforesaid had been deducted from the $3.80 charge to Wells River, to get its coal transported to Montpelier for $3.05 per ton, when the regular tariff rate to Montpelier was $3.55, thereby receiving a preference of 50 cents per gross ton over other shippers.

The tariff in question established the $3.80 rate to points on the Montpelier & Wells River Railroad as follows:

"Barre, East Montpelier, Plainfield, Marshfield, Lanesboro, Groton Pond, Rickers, Groton, South Ryegate, Boltonville, Wells River."

The coal in question was coal actually hauled by the defendant one-half mile to coal pockets on its own line situated between Taylor street and East Montpelier. Taylor street is the point where defendant's line connects with the line of the Vermont Central and where the coal was received by the defendant. The facts regarding this location are made plain by A. W. Prescott, a witness called for the government. The defendant called no witnesses.

Mr. Prescott, who is officially connected with the defendant, says:

"The coal in question was delivered at the Montpelier & Wells River Railroad coal pockets located within the municipal boundaries of Montpelier, in the city of Montpelier. The distance of the pockets from where we connect with the Central Vermont Railway is something like six-tenths of a mile. Our road connects with the Central Vermont at Taylor street which street crosses immediately easterly of the Central Vermont Station. The tracks in the yard of the Montpelier & Wells River Railroad run westerly to Taylor street."

One of the published rules for the application of rates is as follows:

"To any point of destination not named in this tariff, but between any two points of destination named, the rate will be the same as to the next more distant point that is named."

The defendant contends that its action was fair and in strict accordance with the law; that it actually hauled the coal on its own line to a point on its own line between its station at Montpelier and East Montpelier, and was, by the express terms of the tariff, entitled to the rate named in the printed tariff sheet for East Montpelier, which was the "next more distant" point on its own line and was entitled to the $3.80 rate. In other words, the defendant maintains that if it took the coal from the connecting carrier and hauled it on its own line to its coal pockets, which point was not named in the tariff, it was entitled to the rate fixed for the next point on its line which was named, viz.: East Montpelier. No wrongful attempt or purpose can be inferred from the fact that the defendant billed the coal to Wells River, for the identical result would have followed if they had billed the coal to East Montpelier. If they had so billed it, it is difficult

to perceive how any presumption of guilt could arise from such a transaction. As before stated, the tariff rate for all points on the defendant's line was $3.80. The tariff clearly indicates that it was intended to apply to Montpelier as a station on the line of the defendant and also on the line of the Central Vermont Railway. It was not the intention to deprive the defendant of its share of the division if it actually took possession of the coal and hauled it to a point on its own line, even though that point be within the corporate limits of Montpelier. If it were the purpose of the tariff to prevent the defendant from receiving compensation for hauling coal to the easterly line of the town of Montpelier, which, from an examination of the map introduced, would seem to be considerably over two miles, it should say so in unmistakable terms.

The most favorable view for the plaintiff which can be taken is that the question is involved in doubt. It must be remembered that this is a criminal prosecution, and no man should be convicted of a crime for giving to a doubtful document an interpretation which an intelligent and honest man might easily adopt.

The judgment is reversed.